IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOSHUA CUMMINGS                                                          PLAINTIFF
ADC #172826

V.                          Case No. 4:24-CV-00506-JM-BBM

ARKANSAS DEPARTMENT
OF CORRECTIONS, Cummins Unit;
GARY MUSSELWHITE, Warden,
DHO, Cummins Unit; ROBERT PIERCE,
Deputy, Assistant Warden, Cummins Unit;
LEWIS YOUNG, Warden of Operations,
Treatment Coor., Cummins Unit; and
JIMMY COLEMAN, Building Major/Chief
of Security, Cummins Unit                                                DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to

United States District Judge James M. Moody Jr. You may file written objections to all or

part of this Recommendation. If you do so, those objections must: (1) specifically explain

the factual and/or legal basis for your objection; and (2) be received by the Clerk of this

Court within fourteen (14) days of the date of this Recommendation. If you do not file

objections, Judge Moody may adopt this Recommendation without independently

reviewing all of the evidence in the record. By not objecting, you may waive the right to

appeal questions of fact.

## I.    INTRODUCTION

On June 12, 2024, Plaintiff Joshua Cummings ("Cummings"), an inmate in the Cummins Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983. (Doc. 2). An Amended Complaint followed. (Doc. 21).

The Court conducted an initial screening of the Amended Complaint pursuant to the Prison Litigation Reform Act ("PLRA")[1] and noted several deficiencies. (Doc. 33). Cummings was given leave to file a second amended complaint and placed on notice that an amended pleading would supersede his previous Complaint. *Id*. at 7 (citing *In re Atlas Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)).

Cummings failed to file a second amended complaint, and the time to do so has passed. (Doc. 33 at 8). Accordingly, the Court will proceed with screening his operative first Amended Complaint, (Doc. 21). 28 U.S.C. § 1915A(a).

## II.    ALLEGATIONS

In his Amended Complaint, Cummings alleges that Defendants—Warden Gary Musselwhite ("Musselwhite"), Assistant Warden Robert Pierce ("Pierce"), Warden of Operations Lewis Young ("Young"), and Building Major and Chief of Security Jimmy Coleman ("Coleman")—violated his constitutional rights because he was exposed to substandard living conditions in the Cummins Unit's isolation cells. (Doc. 21).

---

[1] The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, the Court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

Particularly, he complains of approximate month-long stays in the following isolation cells: (1) South 1 in early 2023; (2) South 5 in early 2024; (3) North 17 from mid-May to late-June 2024; and (4) East 17 around October 2024. *Id.* at 5–7.

South 1. While housed in South 1 in early 2023, Cummings was provided a "mat and coverings." (Doc. 21 at 6). However, the temperature was so cold that the bedding had "NO EFFECT." *Id.*

South 5. While housed in South 5 in early 2024, Cummings was only provided a sleeping bag. (Doc. 21 at 6). Again, the temperature was extremely cold, and the air flowed through the opening at the top of the sleeping bag. *Id.*

North 17. Cummings was housed in North 17 from mid-May to late June, during the "hot months" of 2024. (Doc. 21 at 5). He was provided a black sleeping bag that absorbed heat. *Id.* He slept on top of the sleeping bag but would still wake up drenched in sweat. *Id.*

North 17 also had a jammed cell door. (Doc. 21 at 5). An officer would have to kick the door from the outside, then Cummings would have to kick the door from the inside several times before he could exit. *Id.* Cummings tried to grieve the jammed-door issue in July 2024, but his grievance was denied as untimely by non-Defendant Chief Deputy Director Reed. *Id.*

East 17. Cummings's East 17 cell had rusted and jagged metal around the "bean hole." (Doc. 21 at 6). Cummings complained to multiple officers about the issue, but nothing was done until Cummings injured himself. *Id.* at 6–7. On that day, Cummings

3

caught his right middle finger on the "burred metal" while reaching for his breakfast tray. *Id.* at 6. It left a deep gash. *Id.*

A nurse and several officers told Cummings to put some soap and water on his cut and that it would not kill him. (Doc. 21 at 6). So, Cummings was forced to nurse the injury himself. *Id.* His finger swelled up and developed pus. *Id.* The wound leaked "green, yellowish, and clear fluids, with a black tint within." *Id.* at 7. Cummings drained and cleaned the wound for two-and-a-half weeks before it started to heal. *Id.*

Cummings filed three grievances about the jagged metal and the resulting injury. (Doc. 21 at 7). But he only received a response to one, and that grievance response was brought to his cell by another inmate. *Id.* After that grievance, a work order was completed on the jagged metal. *Id.*

<u>Conditions Common to All Isolation Cells</u>. In addition to the extreme temperatures and jagged metal, Cummings claims that all Cummins's isolation cells are hazardous. (Doc. 21 at 4). Specifically, the isolation cells all lack hot water unless the showers are running. *Id.* They also lack ventilation, air circulation, insulation, and a sprinkler system. *Id.*

<u>Hallway Conditions</u>. The vents in the hallway remain constantly open, so "outside air + toxins" get inside, such as the feces in the manure that is spread on the fields outside. (Doc. 21 at 4–5). There is a bubbly, white, sulfuric-smelling substance right under the vents. *Id.* at 5. And, when it rains heavily, the halls flood with filthy water. *Id.*

Cummings does not name any of the previously mentioned officers or nurses—whom Cummings directly interacted with—as Defendants to this action. Instead, he names the Warden, Assistant Warden, Warden of Operations, and Building Major/Chief of

Security. (Doc. 21 at 1–2). He claims these supervisory officials—Musselwhite, Pierce, Young, and Coleman, respectively—see the substandard and hazardous conditions first-hand when making rounds every Sunday. *Id.* at 8. Although Cummings is no longer in isolation, he complains that Defendants still house inmates in the conditions of which he complains. *Id.*

Cummings sues Defendants in their individual capacities only. (Doc. 21 at 2). He seeks monetary damages. *Id.* at 9.

## III.    SCREENING

To survive pre-service screening under the PLRA, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Id*. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). However, "[a] pro se complaint must be liberally construed," and courts "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (cleaned up; citations omitted); *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citation omitted).

Cummings purports to bring conditions-of-confinement claims against the supervisory Defendants. The Court also construes a medical-deliberate-indifference claim from Cummings's allegations.

### A.    Conditions of Confinement

Because Cummings was a convicted prisoner at the time of the alleged conduct, (Doc. 2 at 3), his conditions claim falls under the Eighth Amendment. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020). To establish a conditions-of-confinement claim under the Eighth Amendment, Cummings "must demonstrate (1) that the alleged deprivation was objectively, sufficiently serious enough to result in the denial of the minimal civilized measure of life's necessities, and (2) that the prison official whose action or omission caused the deprivation behaved with deliberate indifference to inmate health or safety." *Hamner v. Burls*, 937 F.3d 1171, 1178 (8th Cir. 2019) (cleaned up). Additionally, Cummings must show he suffered an "injury or adverse health consequence[] as a result of his confinement." *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995).

Cummings alleges he was subject to extreme cold and extreme heat, unsanitary conditions, and hazardous conditions. Thus, Cummings has pleaded that he has variously been deprived of a "life necessity"—a designation reserved for things such as food, warmth, exercise, hygiene, and safety. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Thomas-El v. Francis*, 99 F.4th 1115, 1117–18 (8th Cir. 2024). However, save for Cummings's finger injury in East 17, Cummings fails to allege any injury or adverse health consequence from his stays in isolation.

6

Moreover, Cummings's allegation that Defendants "see the condemness [sic] firsthand when they make their Sunday rounds," (Doc. 21 at 8), falls short of showing that any Defendant was deliberately indifferent to Cummings's health and safety. To show deliberate indifference, Cummings must allege facts showing that Defendants "recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (citation omitted).

There are simply no allegations showing any Defendant was personally aware that Cummings was subject to: extreme cold in early 2023 and early 2024; extreme heat and a jammed door from mid-May to late June 2024; a rusted and jagged bean hole around October 2024; or any of those other conditions of which he complains. At most, Cummings's allegation that Defendants made "Sunday rounds" shows that Defendants *should have* been aware of the conditions of which Cummings complains. But this amounts to negligence, not deliberate indifference. *Wilson*, 501 U.S. at 305 (1991); *see also Joseph v. Wheeler*, 144 F.4th 1111, 1115 (8th Cir. 2025) ("Our caselaw just doesn't clearly establish that a supervisor who is aware of potential safety issues but fails to ameliorate them can be deemed to be deliberately indifferent."). Thus, the allegations are far too broad and vague to state a constitutional claim for relief against the named Defendants. It is, therefore, recommended that Cummings's conditions-of-confinement claims be dismissed without prejudice for failure to state a claim for relief.

**B.    Medical Deliberate Indifference**

In order to state a claim based on medical deliberate indifference, Cummings must allege facts showing: (1) he had an objectively serious medical need; and (2) Defendants

knew of but deliberately disregarded that need. *Cannon v. Dehner,* 112 F.4th 580, 586 (8th Cir. 2024). Cummings alleges that he injured his finger on the bean hole and that his finger was swollen and leaking fluid, but a nurse and several officers merely told him to put water and soap on it. (Doc. 21 at 6). However, Cummings does not name the nurse or any of those officers as Defendants to this action and, accordingly, does not state a viable medical-deliberate-indifference claim.

## IV.    CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1.    Cummings's Amended Complaint, (Doc. 21), be DISMISSED without prejudice for failure to state a claim upon which relief may be granted.

2.    The Court RECOMMEND that the dismissal count as a "strike" for the purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

3.    The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 20th day of October, 2025.

_____
UNITED STATES MAGISTRATE JUDGE